UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES STEVEN KENT,

               Petitioner,                    Civil No. 2:11-CV-14114
                                                Honorable Patrick J. Duggan

v.

RAYMOND BOOKER,

               Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND LEAVE TO APPEAL *IN FORMA PAUPERIS* AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Charles Steven Kent ("Petitioner"), presently confined at the

Muskegon Correctional Facility in Muskegon, Michigan, has filed a *pro se* petition

for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is

challenging his conviction in 1982 for one count of first-degree criminal sexual

conduct in violation of Michigan Compiled Laws § 750.520b, for which he is

serving a life sentence.[1]  Petitioner asserts two grounds in support of his request for

relief:

      I.      The trial court abused its discretion in denying Petitioner's
              motion for new trial, based on newly discovered evidence, in

---

[1]Petitioner also was convicted of one count of armed robbery in violation of
Michigan Compiled Laws § 750.529; however, his grounds for relief do not apply
to that conviction.

light of demonstrating his actual innocence, and his right to due process and a fair trial were violated.

II. The trial court abused its discretion when it failed to appoint a DNA expert witness on behalf of Petitioner where the people were allowed to present a DNA expert witness who worked for the Michigan State Police.

(*See* ECF No. 1.)  Respondent has filed an answer to the petition arguing, in part, that it is time-barred.  For the reasons stated below, the Court agrees and denies Petitioner's request for relief.

## Factual and Procedural Background

Petitioner's convictions arise from events on January 26, 1982, which led to the rape and murder of Melvina Daisy ("victim").  Several other individuals were involved in the crimes that took place: Christopher Cochran, his mother Barbara Cochran, and Gerald "Gene" Barker.  Christopher Cochran agreed to testify against his mother and Petitioner in exchange for a guilty plea on a reduced charge.  He testified that Petitioner raped the victim.  At trial, Petitioner admitted to being at the victim's house but denied raping her.  He testified that Barbara Cochran told Christopher Cochran that Barker committed the rape.

Glenn Moore, an expert in serology testified for the prosecution at Petitioner's trial.  Moore had analyzed several fluid samples collected during the victim's autopsy and blood and hair samples collected from the victim's husband

2

Petitioner, Christopher, and Barker.  Moore opined that seminal fluid was detected in the vaginal swabs from the victim, as well as in samples from her underwear and bathrobe, that was consistent with a blood group type "A" secretor.  (10/7/82 Trial Tr. at 36-37.)  He explained that a "secretor" is someone whose bodily secretions (e.g. saliva, sweat, seminal fluid) contain that person's blood group substances. (*Id.*)  Not all people are secretors. (*Id.*)  Moore further testified that the victim's blood group type was "O" secretor, her husband was a blood group type "A" non-secretor, Christopher was a type "O" secretor, and Barker was a type "AB" secretor.  (*Id.* at 23-33.)

The jury convicted Petitioner of armed robbery and first-degree criminal sexual conduct on October 11, 1982.  Thereafter, in unpublished decisions, the Michigan Court of Appeals affirmed the convictions and the Michigan Supreme Court denied Petitioner leave to appeal.  *People v. Kent*, No. 70535 (Mich. Ct. App. Aug. 16, 1984), *lv. den.*, No. 75142 (Mich. Sup. Ct. June 3, 1985).

The Michigan legislature enacted a law, effective January 1, 2001, providing that a Michigan prisoner convicted of a felony before January 8, 2001, may petition the circuit court to order DNA testing of biological material identified during the investigation leading to his or her conviction and for a new trial based upon the results of the testing provided the petition is filed no later than January 1,

3

2012.  *See* Mich. Comp. Laws § 770.16.  On April 27, 2004, Petitioner filed a post-conviction motion in the state trial court requesting DNA testing pursuant to Section 770.16.  The trial court denied the motion without prejudice on May 21, 2004, because Petitioner failed to meet his burden of demonstrating that biological material was available for testing.  (*See* ECF No. 6-12 at Pg ID 1176.)

Petitioner filed a second post-conviction motion on September 17, 2004, to which he attached a letter from the police department where the crime occurred indicating that biological material was available.  On December 15, 2004, the trial court ordered DNA testing.  (*See* ECF No. 6-12 at Pg ID 1192-93.)  The court entered a modified order on July 19, 2005, requiring that the Michigan State Police perform the DNA testing at its forensic laboratory in Lansing, Michigan.  (*See id.* at Pg ID 1194.)  The court modified the order again on December 5, 2005, indicating that the testing could be performed at any qualified Michigan State Police laboratory or qualified laboratory designated by the Michigan State Police. (*See id.* at Pg ID 1195.)

On September 7, 2006, the prosecutor filed the reports containing the results of the DNA testing in the trial court.  Sarah M. Thibault, a forensic scientist with the Michigan State Police, had tested the DNA material.  (*See id.* at Pg ID 1199-1202.)  Thibault concluded that due to insufficient and/or degraded DNA, no DNA

4

profile was developed from the sperm fraction derived from the vaginal swab taken

from the victim and sections of the victim's bathrobe and therefore no DNA

comparisons could be made. (*Id*. at Pg ID 1200.) Thibault, however, was able to

exclude Petitioner as a donor of the nonsperm fraction obtained from the vaginal

swab and a section of the victim's robe and the sperm fraction from a section of the

victim's robe. (*Id*. at Pg ID 1201-02.) Upon receipt of the DNA test reports, the

trial court appointed counsel to represent Petitioner. (*Id*. at Pg ID 1203.)

      Petitioner's appointed counsel filed a motion for new trial in the state court

on November 6, 2007. In the motion, counsel requested the appointment of a DNA

expert. The trial court issued a decision on March 27, 2008, denying the motion

with respect to Petitioner's armed robbery conviction and setting an evidentiary

hearing regarding his criminal sexual conduct conviction. (*Id*. at Pg ID 1273-

1282.) The court concluded that Petitioner was not entitled to the appointment of a

DNA expert. (*Id*.)

      On January 20, 2009, following the evidentiary hearing, the trial court

entered an opinion and order denying Petitioner's motion for a new trial in

connection with his criminal sexual conduct conviction. (*Id*. Pg ID 1283-89.) On

December 1, 2009, the Michigan Court of Appeals denied Petitioner leave to

appeal. *People v. Kent*, No. 293803 (Mich. Ct. App. Dec. 1, 2009) (unpublished

opinion).  On June 28, 2010, the Michigan Supreme Court also denied Petitioner leave to appeal.  *People v. Kent*, 486 Mich. 1042, 783 N.W.2d 338 (2010) (Table).

Petitioner's pending application for the writ of habeas corpus was received by this Court on September 21, 2011.  It is signed and dated August 29, 2011. Under the "prison mailbox rule" the latter date is used for determining the timeliness of the petition.  *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012).

## Applicable Law and Analysis

As relevant here, the Antiterrorism and Effective Death Penalty Act ("AEDPA") requires a state prisoner to file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(A), (D). Where the petitioner's conviction became final before the AEDPA's effective date of April 24, 1996, a one year grace period applies.  *Griffin v. Rogers*, 399 F.3d 626, 632 (6th Cir. 2005).  Petitioner's conviction became final in 1985.[2]  Therefore,

---

[2]On direct appeal, the Michigan Supreme Court denied Petitioner leave to appeal on June 3, 1985.  Petitioner's direct appeal became final on September 2, 1985, when the ninety days for seeking certiorari with the United States Supreme

absent state collateral review or a subsequently discovered factual predicate, he was required to file his petition for federal habeas relief by April 24, 1997.

Petitioner did not file a post-conviction motion prior to April 24, 1997. The Court will assume for purposes of evaluating the timeliness of his petition, however, that the factual predicate supporting his request for relief is contained in the DNA testing reports (rather than the Michigan legislature's enactment of the statute allowing him to request DNA testing).[3] When those results were received in September 2006, Petitioner's post-conviction motions were pending. Thus those

Court expired without him seeking review. *See Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 685 (2009).

[3]At least one Circuit Court has held that AEDPA's one-year clock starts to run when a prisoner becomes aware that DNA material is available for testing and a request for testing can be made. *See Scarlett v. Sec., Dep't of Corr.*, 404 F. App'x 394, 400 (11th Cir. 2010) (unpublished opinion) (concluding that a 2002 DNA report put the petitioner on notice that a ski mask worn during the crime contained DNA material and therefore that the contents of a 2006 DNA report were not new factual predicates that could not have been discovered earlier with due diligence). Citing *Scarlett*, one district judge in the Eastern District of Michigan held that AEDPA's clock began to run for a Michigan prisoner basing his request for habeas relief on new DNA evidence, when Michigan Compiled Laws § 770.16 became effective and the prisoner was aware that DNA material was available for testing. *See Karr v. Lafler*, No. 10-14957, 2011 WL 5405818, at *2 (E.D. Mich. Nov. 8, 2011) (unpublished opinion). The Sixth Circuit Court of Appeals has not addressed the issue, however. Therefore, for purposes of evaluating Petitioner's case, this Court will assume that the triggering event that started AEDPA's clock is the date Petitioner received the DNA testing reports which made him aware of the factual predicates on which his claim of innocence is based.

7

motions tolled the running of the one-year limitations period.  *See* 28 U.S.C.
§ 2244(d)(2).

A post-conviction motion remains pending in the state courts, for purposes
of § 2244(d)(2), until it "has achieved final resolution through the *state's*
post-conviction procedures."  *Carey v. Safford*, 536 U.S. 214, 220, 122 S. Ct. 2134,
2138 (2002) (emphasis added).  Accordingly, the one-year statute of limitations
period is not tolled pursuant to § 2244(d)(2) during the pendency of a petition for
certiorari to the United States Supreme Court seeking review of the denial of state
post-conviction relief.  *Lawrence v. Florida*, 549 U.S. 327, 332-35, 127 S.Ct. 1079,
1083-84 (2007).  Thus AEDPA's one-year limitations period began to run on June
28, 2010, when the Michigan Supreme Court denied Petitioner leave to appeal the
denial of his motion for new trial.  The limitations period expired one year later on
June 28, 2011, two months before Petitioner signed and dated his pending petition.

The Supreme Court recently held, however, that a credible showing of actual
innocence may allow a prisoner to pursue his constitutional claims on the merits
even though AEDPA's limitations period otherwise would bar the claims.
*McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  This exception applies in
"cases in which new evidence shows 'it is more likely than not that no reasonable
juror would have convicted [the petitioner].' " *Id*. at 1933 (quoting *Schlup v. Delo*,

8

513 U.S. 298, 329, 115 S. Ct. 851, 868 (additional internal quotation marks and citation omitted) (brackets inserted in *McQuiggin*).  The Sixth Circuit Court of Appeals has advised that to make this assessment, "a court must survey 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' "  *Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 613 (6th Cir. 2013) (unpublished opinion) (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064 (2006)).  Then the court must " 'assess the likely impact of the evidence on reasonable jurors[.]' "  *Id.*

Petitioner argues that he is actually innocent of criminal sexual conduct, citing to the conclusions in Thibault's report.  Thibault's findings, however, do not exonerate Petitioner.  Petitioner was excluded as the source of nonsperm fractions pulled from the victim's bathrobe and the vaginal swab and a sperm fraction from the bathrobe.  Thibault testified at the post-conviction evidentiary hearing, however, that once a biological stain is in dried form, the DNA sample may be good indefinitely.  (8/25/08 Hr'g Tr. at 14.)  At Petitioner's trial, the victim's husband testified that he last had sexual intercourse with his wife two days before she was murdered.  (10/5/82 Trial Tr. at 220.)  Thus a reasonable juror could conclude that if the husband's semen subsequently was deposited on the victim's

9

robe, he could have been the donor of the sperm fraction taken from one section of

the robe.  No DNA comparisons could be made for the sperm fractions from the

vaginal swab and other sections of the robe, however, due to insufficient and/or

degraded DNA.  Thus Petitioner could have been the donor of the genetic material

found there.  Additionally, Thibault testified that it is possible for there to be

sexual penetration without the perpetrator leaving DNA material, such as where the

perpetrator does not ejaculate.  (8/25/08 Hr'g Tr. at 27.)  Thus Petitioner still could

have been guilty of raping the victim without leaving any biological material

containing his DNA.

Petitioner therefore fails to convince this Court that, in light of the DNA

evidence, no reasonable juror would have voted to find him guilty of first-degree

criminal sexual conduct beyond a reasonable doubt.  This is particularly so given

the substantial "old" evidence demonstrating his guilt (notably Christopher

Cochran's trial testimony and Petitioner's numerous inconsistent statements to the

police but eventual admission to being present at the victim's home when the

crimes were committed).

In short, the Court concludes that Petitioner's habeas petition was filed after

the AEDPA's limitations period expired and that he is unable to make a claim of

actual innocence to avoid the conclusion that it is time-barred.  The Court therefore

10

is denying Petitioner's request for the writ of habeas corpus.

When a district court issues a final decision adverse to a habeas petitioner, it must decide whether to issue a certificate of appealability. *See* R. 11 of the Rules Governing § 2254 Cases. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court denies habeas relief on procedural grounds without reaching the petitioner's constitutional claims, this means that jurists of reason would find it debatable whether (1) the petition states a valid claim of a denial of a constitutional right; and (2) the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*.

Petitioner's application for the writ of habeas corpus is barred by a plain procedural rule. As such, the Court declines to issue a certificate of appealability and denies Petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous.

11

For the reasons stated,

**IT IS ORDERED**, that Petitioner's request for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that the Court declines to issue a certificate of appealability and denies Petitioner leave to appeal *in forma pauperis*.

Dated: March 13, 2014                    s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

Copies to:
Charles Kent, #161961
Muskegon Correctional Facility
2400 S. Sheridan
Muskegon, MI 49442

AAG Andrea M. Christensen

12